UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA,        )
                                 )
            v.                   )
                                 )   Cr. No. 20-10128-MLW
                                 )
KEENAM PARK,                     )
       Defendant.                )

MEMORANDUM AND ORDER

WOLF, D.J.                                          June 5, 2023

        The court has considered defendant Keenam Park's Motion for

Compassionate Release under 18 U.S.C. §3582(c)(1)(A) (Dkt. No.

149) (the "Motion"), the government's Opposition (Dkt. No. 152),

and the letter from Pastor Dongsup Samuel Kim (Dkt. No. 150). A

hearing is not necessary. For the reasons explained below, the

Motion is being denied.

        As a preliminary matter, the government argued that Park has

failed to satisfy §3582(c)(1)(A)'s exhaustion requirement, which

would require the court to deny the Motion without prejudice. Gov't

Opp'n to Mot. at 5, Dkt. No. 152. The government is incorrect.

§3582(c)(1)(A) requires that a court may consider reducing the

term of imprisonment upon the motion of the defendant only:

> after the defendant has fully exhausted all
> administrative rights to appeal a failure of the Bureau
> of Prisons to bring a motion on the defendant's behalf
> or the lapse of 30 days from the receipt of such a
> request by the warden of the defendant's facility,
> whichever is earlier.

18 U.S.C §3582(c)(1)(A) (emphasis added). This means that a defendant cannot rely on the thirty-day provision and must exhaust administrative remedies only if "the warden of their facility responded to their request within thirty (30) days of receipt." United States v. Nieves, No. 95-405, 2022 WL 2712528, at *2 (D.P.R. July 12, 2022); see also id. at *3 ("[T]he thirty (30)-day provision is designed to ensure that wardens act in a timely manner and do not unnecessarily delay responding to requests from defendants."). If the warden in this case had responded within thirty days, Park would be required to exhaust his administrative remedies before this court could properly consider his Motion for Compassionate Release. However, here the warden took thirty-six days to respond. Compare Dkt. No. 149-6 at 2 (Park's Inmate Request for Compassionate Release Consideration dating March 24, 2022), with id. at 3 (denying Park's request on April 29, 2022). Therefore, Park need not exhaust his appeal of the warden's decision before this court may properly consider his Motion. Accordingly, the court is deciding Park's Motion on the merits.

The COVID-19 pandemic was extraordinary. However, it no longer constitutes the emergency that it once did. Vaccinations against COVID-19 are safe, effective, and readily available. On May 11, 2023, the United States Department of Health and Human Services ended the federal Public Health Emergency for COVID-19. Fact Sheet: End of the COVID-19 Public Health Emergency, U.S. Dept.

2

Health & Hum. Servs. (May 9, 2023), https://www.hhs.gov-
/about/news/2023/05/09/fact-sheet-end-of-the-covid-19-public-
health-emergency.html. COVID-19 is also well controlled within the
Bureau of Prisons. As of June 1, 2023, FMC Devens, where Park is
incarcerated, has no active COVID-19 cases among inmates. BOP
COVID-19 Statistics, Fed. Bureau of Prisons (last visited June 1,
2023), https://-www.bop.gov/coronavirus/covid19_statistics.html.

Moreover, even if the COVID-19 pandemic had not ended, Park
would still not be entitled to Compassionate Release. Park claims
that he has "significant risk factors" for COVID-19 complications,
including "latent tuberculosis infection (LTBI), asthma, sleep
apnea, hypertension, pre-diabetes, hyperchloremia, and age."
Motion at 2, Dkt. No. 149. However, Park is 62 years old and has
no clearly recognized co-morbid conditions. Sleep apnea,
hyperchloremia, and pre-diabetes (as opposed to Type 1 or Type 2
diabetes) are not factors that place Park at significant risk of
suffering severely or dying if he becomes infected with the virus.
See Centers for Disease Control and Prevention, People with Certain
Medical Conditions, CDC (Nov. 22, 2022),
https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precau-
tions/people-with-medical-conditions.html ("CDC Guidelines").
Hypertension is a factor that "possibly" creates a heightened risk.
Id. The CDC does recognize asthma as a heightened risk factor, but
only "if it's moderate to severe." Id. Park's asthma is described

3

as "well controlled," with "no symptoms with daily activities or at night." Dkt. No. 152 at 14.

The court's conclusion is not altered by Park's latent tuberculosis infection ("LTBI"). The CDC does recognize tuberculosis as a risk factor for COVID-19 complications. See CDC Guidelines. However, Park has only LTBI, for which he completed treatment in June 2021. Dkt. No. 152 at 11. Although the CDC Guidelines do not comment on LTBI, the British Columbia CDC states that:

> Currently, there is no evidence to suggest that latent TB infection (LTBI) alone puts you at higher risk of getting COVID-19. If you are generally in good health, it is unlikely that LTBI influences the symptoms associated with COVID-19. Recently, there is some evidence that if you develop severe COVID-19, you may be at increased risk of progressing to active TB if you have untreated TB infection. This may happen when COVID-19 infection causes a significant abnormal immune response and/or some COVID-19 treatments weaken the immune system.

Tuberculosis and COVID-19, BC Centre for Disease Control (May 26, 2022), http://www.bccdc.ca/health-info/diseases-conditions/covid-19/priority-populations/tuberculosis-and-covid-19; see also United States v. Dickerson, No. 2:04-cr-20055, 2021 WL 674008, *4 (C.D. Ill. Feb. 22, 2021) (citing the same). Although not yet addressed by the First Circuit, the majority of district courts to have considered the issue have rejected LTBI as a ground for compassionate release. See, e.g., Dickerson, 2021 WL 674008 at *4 (discussing LTBI in depth, collecting cases, and denying

4

compassionate release); <u>United States v. Bethel</u>, No. 3:08-CR-118, 2020 WL 7321372, at *3 (E.D. Tenn. Dec. 11, 2020); <u>United States v. Rodriguez-Sanchez</u>, No. 8:18-cr-299-VMC-AAS, 2021 WL 3912242, at *2 (M.D. Fla. Sept. 1, 2021); <u>United States v. Sayonkon</u>, No. 16-265(2) ADM/HB, 2020 WL 5877611, at *3 (D. Minn. Oct. 2, 2020); <u>United States v. Johnson</u>, No. 08-297, 2020 WL 7488644, *3 (E.D. Pa. Dec. 21, 2020). District courts that have granted compassionate release to inmates with LTBI have done so when comorbidities are present, or when the LTBI is untreated, which is not the case here. <u>See, e.g.</u>, <u>United States v. Luna</u>, 478 F. Supp. 3d 859, 862 (N.D. Cal. 2020) (listing LTBI among other factors such as age and hepatitis C as meriting compassionate release due to COVID-19); <u>United States v. Atwi</u>, 455 F. Supp. 3d 426 (E.D. Mich. 2020) (granting compassionate release to a defendant with recently diagnosed and untreated LTBI).

In addition, Park is fully vaccinated against COVID-19 and has received two booster shots. Therefore, Park is not at significant risk of suffering severely or dying should he contract the COVID-19 virus.

As an alternate position, Park a cites a number of cases to support the proposition that courts should grant a motion for compassionate release where COVID-19 has made incarceration a greater hardship than the court could have foreseen at the time of sentencing. <u>See</u> Motion at 4, Dkt. No. 149. These cases are not

analogous to the instant case. In each case Park relies on, the defendant was sentenced prior to the onset of the COVID-19 pandemic in the United States. See generally United States v. Hatcher, No. 18 Cr. 454-10, 2021 WL 1535310, (S.D.N.Y. Apr. 19, 2021) (defendant sentenced March 4, 2020); United States v. Romero, No. 15 Cr. 445-18, 2021 WL 1518622 (S.D.N.Y. Apr. 16, 2021) (defendant sentenced in 2019); United States v. Quinones, No. 00 Cr. 761-1, 2021 WL 797835 (S.D.N.Y. Feb. 27, 2021) (defendant sentenced in 2004); United States v. Mcrea, No. 17 Cr. 643, 2021 WL 142277 (S.D.N.Y. Jan 15, 2021) (defendant sentenced in 2018). Park, by contrast, was sentenced on December 9, 2020. See Dkt. No. 103. The court was aware of the hardships created by the COVID-19 pandemic and considered such factors during sentencing.

Finally, consideration of the sentencing factors enumerated in 18 U.S.C. §3553(a) "may serve as an independent basis for a district court's decision to deny a compassionate-release motion." United States v. Saccoccia, 10 F.4th 1, 8 (1st Cir. 2021). As the court discussed at the December 9, 2020 Sentencing Hearing, Park's crimes were serious. May 17, 2021 Tr. at 44, Dkt. No. 141. From 2019 to 2020, Park used his business, EduBoston, to collect tuition and other payments from international students' families, but failed to remit those monies to partnering schools as promised. Instead, Park used those funds on unrelated expenses, including personal expenses. This fraudulent scheme exploited and inflicted

6

trauma on parents who were trying to obtain education and opportunities for their children. Id. at 42. This was also not Park's first offense. Id. at 43. He was convicted of a comparable crime in South Korea, which he failed to disclose to his counsel in the United States in an effort to mislead this court. Id. at 43-44. Given Park's crime, background, and attempt to mislead the court, a reduction of Park's five-year sentence now would not send a message that promotes adequate deterrence to Park or to society.

Additionally, if released, there is a serious danger that Park would continue to perpetrate fraud. In connection with his post-sentencing appeal, Park provided a financial affidavit that the court found to be "incomplete and possibly inaccurate." Jan. 5, 2021 Mem. & Order at 3, Dkt. No. 119. Park also emptied two brokerage accounts that he had agreed to preserve for purposes of forfeiture and transferred an automobile he had agreed to forfeit to a family friend for an amount significantly below its estimated value. See Gov't Opp'n at 11, Dkt. No. 151. Park remedied these actions only after being confronted by the government. Id. Therefore, releasing Park now would not adequately protect the public from further crimes of the defendant.

In view of the foregoing, the Motion (Dkt. No. 149) is hereby DENIED.

UNITED STATES DISTRICT JUDGE